UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**REGINA ADAMS,**
        **Plaintiff**

**v.**                 **Civil Action No.**
                      **3:05CV735-J**

**JO ANNE B. BARNHART, Commissioner**
 **Social Security Administration,**
        **Defendant**

## **MEMORANDUM OPINION**

   This case presents plaintiff Regina Adams' challenge to the decision of the Commissioner denying her claim to disability insurance benefits. After examining the materials of record, the arguments of the parties and the applicable authorities, the Court is of the opinion that the decision of the Commissioner should be vacated and this matter remanded for further proceedings.

   Ms. Adams filed her application in February 2003, claiming that she had been unable to engage in substantial gainful employment since June of 2001. After a hearing, the Administrative Law Judge ("ALJ") determined that her degenerative disc disease and degenerative joint disease of the spine were severe impairments that prevented her from performing any of her past relevant work. The ALJ further found that Ms. Adams had transferable skills and that she retained the residual functional capacity for a significant range of light work existing in significant numbers.

   If the Commissioner's decision is supported by substantial evidence, the reviewing

Court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991). The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion. Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986). However, if the administrative proceedings include errors of law, it is not possible to determine the existence of substantial evidence until the errors are corrected.

Plaintiff contends that the ALJ erred at Step 3 of the sequential evaluation process. She believes she has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"). Specifically, she contends that she met Listing 1.04B, which requires a showing of "compromise of a nerve root or the spinal cord with "spinal arachnoiditis ... manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." She contends that this condition is demonstrated by medical evidence of record, such that the evaluation should have terminated at Step 3 with a finding of disability. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

Plaintiff bears the burden of proving that she meets or equals a Listing. Burress v. Secretary, 835 F.2d 139 (6th Cir. 1987). She must present specific medical information to satisfy all of the Listing criteria. 20 C.F.R. Sec. 416.925. Listings are to be interpreted very strictly, and the plaintiff must establish the existence of all elements of the Listing. Foster v. Halter, 279

F.3d 348 (6th Cir. 2001), Hale v. Secretary, 816 F.2d 1078 (6th Cir. 1987). She cannot show that she "equals" a Listing simply by showing overall functional impact of her condition; "equivalence" is a test used only when the claimant's impairment is unlisted, and it is satisfied only by presenting medical evidence of findings "equal in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990).

In support of her argument, Ms. Adams points to the report of a July 23, 2004 MRI. The MRI was ordered because of "lower back pain radiating to left leg with numbness." Tr. 185. One may reasonably wonder whether "numbness" is comprehended within dysesthesia, which is typically described as a severe burning. Of more significance, however, is the very tentative nature of the MRI report, which included this impression:

> Arachnoid cyst or perineural/Tarlov cyst, S2 level, mildly expanding the bony spinal canal and having slightly different signal than CSF on the T2 weighted sequences. This difference in signal may relate to differences in motion and/or partial or complete noncommunication with the thecal sac, which markedly attenuates just above the lesion. Suggest clinical correlation with respect to the sacral region.

Tr. 185. While the words "arachnoid cyst" are mentioned here, the radiologist's impression is ringed with uncertainty, and a reasonable fact-finder could readily determine that this does not constitute the "confirmation" called for by the Listing, particularly in view of the strict interpretation to be applied to Listings. While this evidence is clearly important when conducting the Stage 4 and 5 evaluations, the Court cannot agree that it compels termination of the analysis at Stage 3.

Ms. Adams further argues that the ALJ erred by failing to accord to her treating physician's opinion the weight to which it was entitled. She points to the September 2004 report of Norman Miller, who relied on the MRI reports in stating that Ms. Adams had an arachnoid

3

cyst that caused severe pain, resulting in the need to lie down for seven hours out of an eight hour work day. Tr. 189-190.

It has long been established that the special position occupied by a treating physician calls for his or her opinion to be accorded great weight. While the ALJ is not bound by the opinions of a treating physician, he is required to set forth some basis for rejecting that opinion. Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). There is no error in declining to accept the unsupported conclusory statement of a physician, even a treating physician. Hall v. Bowen, 837 F.2d 272 (6th Cir. 1988); Duncan v. Secretary, 801 F.2d 847 (6th Cir. 1986). In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the court confirmed the weight ordinarily due the opinion of a treating physician. Wilson also underlined the fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. Section 404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician. See also Soc.Sec.Rul. 96-2p.

With respect to the opinion in issue, the ALJ's treatment is surprisingly spare. The ALJ stated that he had "considered the opinion of Dr. Miller, dated September 20, 2004, on the claimant's functional capacities and gave it little weight. Dr. Miller's opinion is not consistent with the objective evidence or the opinions of Dr. Kerins, Dr. Goodrich, and R. Williams, the claimant's treating physicians since June of 2001." Tr. 20. Ms. Adams infers from this that the ALJ did not view Dr. Miller as a treating physician, despite the fact that the file includes his treatment notes as early as April of 2004 (Tr. 244), his referral of plaintiff to a Pain Management Group (Tr. 235), and his having ordered the MRI studies discussed above (Tr. 185).

Furthermore, Ms. Adams contends that the ALJ erroneously believed that other physicians who had expressed different opinions had been treating Ms. Adams since 2001.

All of this represents speculation as to what the ALJ might have understood. In contrast, there are some identifiable matters that suggest the ALJ did not commit error. Plaintiff is unable to point to anything suggesting that Dr. Miller believed her condition had worsened since 2001 - 2002, when she was last treated by the Georgia physicians upon whose treatment records the ALJ relied. Indeed, Dr. Miller explicitly stated that Ms. Adams had been "functioning at the level described in [the September 2004 report]" since June 21, 2001. Tr. 190. This statement could not have been based on personal observation, and it does not appear to have been based on assumption of progression of symptoms, or even on new information. Rather, it would appear to have been based on Ms. Adams' own report. As Ms. Adams concedes, Dr. Miller did not examine her until three years after the cited date of June 21, 2001. The 2001 treating records, including physical therapy records, do not seem to support the level of limitation described by Dr. Miller in September 2004. Accordingly, while the matter is not without some doubt, it appears that the reasons cited by the ALJ for giving the September 2004 opinion little weight are not inconsistent with recognition of Dr. Miller as a treating physician, and they do not demonstrate legal error.

Finally, Ms. Adams argues that the ALJ committed legal error in evaluating the credibility of her own reports of pain. While pain may support a claim of disability, the claimant's subjective assertions are not sufficient. 20 C.F.R. Sec. 404.1529(a), King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984). If there is objective medical evidence of an underlying medical condition, the ALJ is required to determine whether objective medical evidence confirms the

5

severity of the alleged pain, or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. Stanley v. Secretary, 39 F.3d 115, 117 (6th Cir. 1994), Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994), Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991); Duncan v. Secretary, 801 F.2d 847, 853 (6th Cir. 1986). The ALJ may consider muscle spasms, atrophy, reflex abnormalities, neurological deficits, loss of sensation, household and social activities as well as the type of medication used to alleviate the pain. 20 C.F.R. 416.929©)(3); Jones, supra, at 1370; Blacha v. Secretary, 927 F.2d 228, 231 (6th Cir. 1990).

A significant consideration in the evaluation of pain is the credibility of the claimant, given that tolerance of pain is very much an individual matter. Villareal v. Secretary, 818 F.2d 461, 463 (6th Cir. 1987). "Determination of credibility related to subjective complaints of pain rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly." Gaffney v. Bowen, 825 F.2d 98, 101 (6th Cir. 1987). An "ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990). Stated another way, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997).

Nonetheless, the ALJ's credibility assessment must be supported by substantial evidence. Walters v. Commissioner, 127 F.3d 525 (6th Cir. 1997). Furthermore, if the ALJ rejects the claimant's testimony as not credible, he or she must state reasons for doing so. Auer v.

<u>Secretary</u>, 830 F.2d 594, 595 (6th Cir. 1987).

In this case, no physician has suggested that Ms. Adams does not experience pain, nor did the ALJ find that she did not experience pain. In posing his questions to the vocational expert, the ALJ clearly assumed the existence of some pain, specifically "pain that is uncomfortable but it is not distracting, and it does not interfere with concentration, persistence and pace." Tr. 322. What is at issue is whether the ALJ committed an error of law in evaluating the credibility of Ms. Adams' testimony regarding the *level* of her pain. In finding her complaints of distracting pain not credible, the ALJ observed that after June of 2001, Ms. Adams' treating physicians did not prescribe extensive pain medications and management, and that Dr. Goodrich recommended she resume her normal activities. Tr. 20. This appears to oversimplify the record and gives rise to a concern that all factors may not have been considered.

There is no question that the record is puzzling. For example, in February of 2002, Dr. Kerins reported "I have currently been treating her for neck and back sprain after an accident several months ago. She has failed to improve." Tr. 256. However, in May of 2002, Dr. Willoughby's examination notes reflect an essentially normal exam and that she "in general appears comfortable." Tr. 261. Harmonizing such reports is admittedly difficult, but simply adopting one report and disregarding another is not an acceptable means of identifying "substantial evidence," particularly in view of the persistent reports of considerable pain.

Ms. Adams' pain medications include Vicodin and Neurontin, which suggests more than mild pain. Tr. 20. Treatment records indicate abnormal physical exam and referral to neurosurgery in July of 2004. Tr. 214. On October 27, 2004, Dr. Miller's treatment notes record

7

Ms. Adams' report that she had seen the Neurosurgery Department, which recommended epidurals. Tr. 197. Although that report is not in the record, the record does reflect that she subsequently attempted treatment by epidural injection. She had an epidural injection in January of 2005 and reported 30% relief, but only for two days. Tr. 270. Ms. Adams does not report daily activities that are inconsistent with the level of pain she reports. Considering the record as a whole, the Court concludes that the ALJ's evaluation of the credibility of Ms. Adams' testimony concerning her pain was not error-free.

In addition to the complexity of the treatment records regarding pain, the Court notes some references in the record to Post Traumatic Stress Disorder and the possibility that there are both physical and psychological components to Ms. Adams pain. See, e.g., Tr. 228. As remand is required for the reasons noted above, the Commissioner will have an opportunity to more fully develop that aspect of the record.

An order in conformity has this day entered.